No. 25-2603

FILED
AUG 13 2025
U.S. Court of Appeals
Eighth Circuit- St. Paul, MN

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

In re PRESIDENT DONALD J. TRUMP, Petitioner.

PETITION FOR WRIT OF MANDAMUS
to the United States District Court for the Southern District of Iowa
Case No. 4:24-cv-00449
The Hon. Rebecca Goodgame Ebinger, District Judge

**Alan R. Ostergren**
ALAN R. OSTERGREN PC
500 East Court Avenue
Suite 420
Des Moines, Iowa 50309
alan.ostergren@ostergrenlaw.com
(515) 207-0134

**Edward Andrew Paltzik**
TAYLOR DYKEMA PLLC
914 E. 25th Street
Houston, Texas 77009
edward@taylordykema.com
(516) 526-0341



# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................3

I. RELIEF SOUGHT ........................................................................................ 4

II. ISSUE PRESENTED ................................................................................... 4

III. FACTS NECESSARY TO UNDERSTAND THE ISSUE PRESENTED ......5

    A. The State Court Petition. ....................................................................5

    B. Improper Snap Removal. ....................................................................5

    C. An Amended Complaint is Filed That Destroyed Diversity Jurisdiction. ...6

    D. Despite a Lack of Diversity of Citizenship, the District Court Refuses to Remand to State Court and Instead Strikes the New Plaintiffs From the Case and Certifies its Order for an Interlocutory Appeal............................7

    E. Plaintiffs File a New State Case and Notice Their Dismissal of the Federal Case Because No Defendant Had Answered or Moved for Summary Judgment; the District Court Strikes the Notice of Dismissal, Claiming Jurisdiction Had Been Conferred on This Court with the Filing of the Petition for Permission to Appeal. .............................................. 8

IV. REASONS THE WRIT SHOULD BE GRANTED ........................................10

    A. Grounds for Issuance of a Writ of Mandamus. ...........................................10

    B. Because an Appeal Was Never Docketed in This Court, Rule 42 Did Not Apply to Dismissal of the Petition for Permission to Appeal. .....................14

    C. The District Court Incorrectly Held That Jurisdiction Was in This Court Merely From the Filing of a Petition for Permission to Appeal. .................16

    D. The Court Should Grant a Writ of Mandamus to Correct the District Court's Usurpation of Its Authority. ............................................19

V. CONCLUSION ........................................................................................ 20

CERTIFICATE OF COMPLIANCE ................................................................21

CERTIFICATE OF SERVICE ........................................................................ 22

# TABLE OF AUTHORITIES

**CASES**
*Am. Cyanamid Co.* v. *McGhee*, 317 F.2d 295 (5th Cir. 1963) .................................. 19
*Beacon Theaters, Inc.* v. *Westover*, 359 U.S. 500 (1959) ............................................... 11
*Cheney* v. *United States Dist. Court for D.C.*, 542 U.S. 367 (2004) ......................... 10
*City of Los Angeles, Harbor Div.* v. *Santa Monica Baykeeper*, 254 F.3d 882
    (9th Cir. 2001) ................................................................................................ 16, 17
*D.C. Electronics, Inc.* v. *Nartron Corp.*, 511 F.2d 294 (6th Cir. 1975) ....................... 19
*Foss* v. *Federal Intermediate Credit Bank of St. Paul*, 808 F.2d 657 (8th Cir.
    1986) ...................................................................................................................... 18
*Granfinanciera, S.A.* v. *Nordberg*, 492 U.S. 33 (1989) ................................................. 11
*Griggs* v. *Provident Consumer Disc. Co.*, 459 U.S. 56 (1982) ...................................... 16
*In re Apple, Inc.*, 602 F.3d 909 (8th Cir. 2010) .............................................................. 10
*In re Brazile*, 993 F.3d 593 (8th Cir. 2021) .................................................................... 11
*In re Lombardi*, 741 F.3d 888 (8th Cir. 2014 (en banc) ............................................... 10
*In re Rutledge*, 956 F.3d 1018 (8th Cir. 2020) ............................................................... 13
*In re Volkswagen of Am.*, 545 F.3d 304 (5th Cir. 2008) ............................................... 12
*In re Westcott*, 135 F.4th 243 (5th Cir. 2025) ................................................................ 12
*K.C.1986 Ltd. Partnership* v. *Reade Mfg.*, 473 F.3d 1009 (8th Cir. 2007) .............. 18
*Mohawk Indus., Inc.* v. *Carpenter*, 588 U.S. 100 (2009) ............................................. 10
*Safeguard Bus. Sys., Inc.* v. *Hoeffel*, 907 F.2d 861 (8th Cir. 1990) ............................ 18

**STATUTES**
28 U.S.C. § 1651 ................................................................................................................ 10
Iowa Code § 714H.3(1) ...................................................................................................... 5

**RULES**
Fed. R. App. P. 12(a) ........................................................................................................ 15
Fed. R. App. P. 3(d) .......................................................................................................... 14
Fed. R. App. P. 42(b) ........................................................................................................ 15
Fed. R. App. P. 5. .............................................................................................................. 15
Fed. R. App. P. 5(a)(1) ...................................................................................................... 15
Fed. R. App. P. 5(d)(2) ...................................................................................................... 17
Fed. R. Civ. P. 41(a)(1)(i) ................................................................................................. 18
Fed. R. Civ. P. 54(b) .......................................................................................................... 18
Iowa R. Civ. P. 1.403(1) ..................................................................................................... 5

## I. RELIEF SOUGHT

Petitioner seeks an order directing the United States District Court for the Southern District of Iowa to properly treat the case of *President Donald J. Trump v. J. Ann Selzer, et al.*, Case No. 4:24-cv-00449 as dismissed without prejudice as of June 30, 2025.

## II. ISSUE PRESENTED

This case was improperly removed from the Iowa District Court for Polk County to the United States District Court for the Southern District of Iowa. Before any defendant had answered or moved for summary judgment, President Trump filed a notice of dismissal under Fed. R. Civ. P. 41(a)(1)(A)(i). The district court improperly struck the notice because there was a pending petition for permission to appeal in this Court, and the district court improperly ruled that jurisdiction had been conferred on this Court because of the petition. The issue presented is:

Did the district court's striking of the notice constitute an error that can be remedied by a writ of mandamus?

## III. FACTS NECESSARY TO UNDERSTAND THE ISSUE PRESENTED

### A. The State Court Petition.

On December 16, 2024, President Trump commenced this action against Defendants Ann Selzer, Selzer & Company, The Des Moines Register, and Tribune Company, and Gannett Co., Inc. in the Iowa District Court for Polk County. R. Doc. 1-1. The state court petition contained one claim: a sole count under the Iowa Consumer Fraud Act, Iowa Code Chapter 714H, including § 714H.3(1) and related provisions. Consistent with Iowa law, the Petition did not specify an amount in controversy, but sought actual and statutory damages, and injunctive relief. *See* Iowa R. Civ. P. 1.403(1).

### B. Improper Snap Removal.

On December 17, 2024, before any Defendant had been served, Gannett filed its Notice of Removal and associated documents pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. R. Doc. 1. The case was docketed as case number 4:24-cv-00449. Gannett invoked the district court's diversity jurisdiction, asserting that "[t]here is complete diversity of citizenship between the parties" R. Doc. 1 at ¶ 4, and "President Trump seeks a wide array of damages, including actual damages, statutory damages, and injunctive relief that would have a significant impact on Gannett and The Register's operations. The combined value of the claimed damages in this case would exceed

$75,000, exclusive of costs and interest." *Id.* ¶ 10. Gannett acknowledged the forum-defendant rule but asserted that pre-service removal—typically referred to as "snap removal"—was a proper exception to the rule. *Id.*

### C. An Amended Complaint is Filed That Destroyed Diversity Jurisdiction.

On January 31, 2025, President Trump, U.S. Representative Mariannette Miller-Meeks, and Former Iowa State Senator Bradley Zaun filed their amended complaint against all defendants. R. Doc. 23. President Trump first obtained leave of the district court and consent of the defendants to file and serve an amended complaint with joined plaintiffs. R. Doc. 20 at ¶¶ 1-2, R. Doc. 22 at ¶¶ 1-2. These orders allowed plaintiffs to file and serve the amended complaint: "1. President Trump and any other parties joined as plaintiffs may file an Amended Complaint on or before January 31, 2025; 2. If President Trump and any other parties joined as plaintiffs file an Amended Complaint, all Defendants will accept service of the Amended Complaint in accordance with the Federal Rules of Civil Procedure and waive any defenses or objections relating to service of process…" *Id.*

The amended complaint, like the state court petition, contained one count under the Iowa Consumer Fraud Act, but added two claims under Iowa common law for fraudulent misrepresentation and negligent misrepresentation. As explained in the amended complaint, Representative Miller-Meeks and Zaun are citizens of Iowa. R.

6

Doc. 23 at ¶¶ 21-22. Because Selzer, Selzer & Company, and the Des Moines Register are also citizens of Iowa, there was no longer complete diversity of citizenship in the lawsuit. The Plaintiffs moved to remand to state court because of the lack of jurisdiction. R. Doc. 30.

### D. Despite a Lack of Diversity of Citizenship, the District Court Refuses to Remand to State Court and Instead Strikes the New Plaintiffs From the Case and Certifies its Order for an Interlocutory Appeal.

The district court wrongly denied plaintiffs' motion for remand. R. Doc. 65. The district court held that snap removal was proper. *Id.* at 6. It also struck Miller-Meeks and Zaun as improperly joined plaintiffs, re-establishing diversity between the parties. *Id.* at 7-10. The district court certified its ruling as suitable for an interlocutory appeal under 28 U.S.C. § 1292(b). *Id.* at 10-11. President Trump then filed a petition for permission for appeal in this Court. Petition, *Trump* v. *Selzer*, Case No. 25-8003. The petition sought review of the district court's order on two questions: first, whether "snap removal" by a forum defendant 11 hours after the filing of the lawsuit in Iowa state court was effective, and second, whether the district court properly refused to permit an amended complaint that added Iowa citizens as plaintiffs. The petition argued that the district court misconstrued the application of the forum-defendant rule and misapplied a rule about joining nondiverse defendants to refuse the joinder of nondiverse plaintiffs. *See generally*, *Id.*

7

### E. Plaintiffs File a New State Case and Notice Their Dismissal of the Federal Case Because No Defendant Had Answered or Moved for Summary Judgment; the District Court Strikes the Notice of Dismissal, Claiming Jurisdiction Had Been Conferred on This Court with the Filing of the Petition for Permission to Appeal.

Before this Court had acted on the petition, however, the Plaintiffs elected to file a new Iowa state court lawsuit. After filing the new state court suit, on June 30, 2025, the Plaintiffs noticed the dismissal of the original federal court action under Fed. R. Civ. P. 41(a)(1)(A)(i) and filed a notice in this Court that they were dismissing their petition. Because of the limitations of the Court's electronic filing system, the document was labeled as a stipulation of dismissal under Fed. R. App. P. 42, however the document did not recite that rule as authority to dismiss the petition.

Plaintiffs noticed their dismissal in the district court at 2:04 p.m. on June 30, 2025. R. Doc. 71. Defendants moved to strike the notice at 8:22 p.m. the same day. R. Doc. 72. Shortly thereafter, they filed a similar motion in this Court. Defendants requested expedited relief from the district court but did not articulate any imminent harm they would suffer or other basis for deviating from the normal briefing schedule of a motion. *Id.* at 5. Defendants did not request expedited relief from this Court.

On July 1, 2025, at 8:39 a.m., the district court ordered petitioners to respond to the motion to strike by noon on July 2, 2025. R. Doc. 73. A few hours after this order from the district court, defendants filed answers to the amended complaint. R. Doc.

75 and 76. Petitioners filed their response in the district court to the motion to strike the notice of dismissal on July 2, 2025, at 11:51 a.m. R. Doc. 77. At 5:21 p.m. that same day, the district court erroneously granted the motion to strike. R. Doc. 78. It incorrectly held that "Trump's appeal confers jurisdiction to the Eighth Circuit over aspects of this case," and because of this "Trump must first dismiss the appeal before voluntarily dismissing the district court case." *Id.* at 2. The district court further erred in holding that Fed. R. App. P. 42 governed the steps that were required to dismiss the petition for permission to appeal. *Id.*

President Trump moved to recall the mandate and correct this Court's opinion to reflect that jurisdiction was never conferred on this Court because of the filing of a petition for permission to appeal. This Court denied that motion on July 24, 2025.

## IV. REASONS THE WRIT SHOULD BE GRANTED

### A. Grounds for Issuance of a Writ of Mandamus.

Circuit courts are empowered to grant "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. To grant a writ of mandamus, the Court weighs three factors: (1) the "petitioning party must satisfy the court that he has 'no other adequate means to attain the relief he desires;'" (2) "his entitlement to the writ is 'clear and indisputable;'" and (3) "'the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.'" *In re Lombardi*, 741 F.3d 888, 894 (8th Cir. 2014) (en banc) (quoting *Cheney v. United States Dist. Court for D.C.*, 542 U.S. 367, 380-81 (2004). Mandamus is a "useful safety valve[] for promptly correcting serious errors." *Id.* (citing *Mohawk Indus., Inc. v. Carpenter*, 588 U.S. 100, 111 (2009)).

The writ is available to correct a "clear abuse of discretion." *Cheney*, 542 U.S. at 380. "A clear error of law or clear error of judgment leading to a patently erroneous result may constitute a clear abuse of discretion." *In re Apple, Inc.*, 602 F.3d 909, 911-12 (8th Cir. 2010). "Because mandamus is not to replace the usual appellate process, we will issue a writ only where the aggrieved party has no other adequate means to attain the desired relief." *Id.* at 912 (citing *Cheney*, 542 U.S. at 380-81).

In *In re Apple* this Court used mandamus to review a district court's refusal to transfer a case under 28 U.S.C. § 1404(a). Because appellate review of a final order would not adequately address the refusal to transfer, mandamus was appropriate. *Id.* at 912 ("If Apple were to appeal from an adverse final judgment rendered in Western Arkansas, it could not show that it would have prevailed in a hypothetical trial in Northern California. Therefore, we have recognized that the writ of mandamus is proper, albeit extraordinary, relief for an erroneous ruling on a motion to transfer under § 1404(a).")

*In re Brazile*, 993 F.3d 593 (8th Cir. 2021) is also instructive. Brazile was sued by the government to avoid allegedly fraudulent transfers of assets. *Id.* at 594. The district court struck Brazile's jury demand, despite clear authority dictating entitlement to a jury trial. *Id.* at 595 (citing *Granfinanciera, S.A.* v. *Nordberg*, 492 U.S. 33, 47-49 & n.7 (1989)). This Court granted the writ to correct the district court's error, even though the denial of a jury trial could have been corrected after final judgment. *Id.* ("Brazile has no other adequate means to attain the relief desired. An appeal after final judgment is not sufficient: 'the right to grant mandamus to require jury trial where it has been improperly denied is settled.'") *Id.* at 594 (citing *Beacon Theaters, Inc.* v. *Westover*, 359 U.S. 500, 511 (1959)).

*In re Apple* and *In re Brazile* both support the grant of the writ here. In *In re Apple*, the Court granted the writ simply to correct the location where a federal trial would occur. Later appellate review of the trial location issue could not put the defendant in the same position as it would have been had trial been moved to California. Further, in *In re Brazile* the writ was granted to protect the defendant's jury trial right. The fact that both issues might have been corrected in the normal appellate process was no reason to deny the writ. Just so here. If this case proceeds to a final judgment in federal court, all the time, cost, and effort of litigation will have been wasted when this Court reviews the district court's error of law in denying the voluntary dismissal. The costs and delays of staying in federal court cannot be remedied by a later order from this Court that the district court erred.

As explained by the Fifth Circuit, "[w]e have long recognized that the indignity of being forced to litigate in the wrong proceeding cannot be remedied through 'the regular appeals process.'" *In re Westcott*, 135 F.4th 243, 245 (5th Cir. 2025) (citing *In re Volkswagen of Am.*, 545 F.3d 304, 311 (5th Cir. 2008)). "As we've explained, the harm from litigating in the wrong proceeding 'will already have been done by the time the case is tried and appealed, and the prejudice suffered cannot be put back in the bottle.'" *Id.* at 245-46. *In re Volkswagen*, like *In re Apple*, involved a district court's refusal to change venue. While the normal appellate process is available to

address this error, it is not adequate because the harm of trial in the wrong location will be complete by the time a normal appeal occurs. As the Fifth Circuit explained in *In re Westcott*, mandamus is available when "a district judge misappl[ies] the rules in order to take over a dispute that rightfully belongs in another court." *Id.* at 247. Because the district court's refusal to permit petitioner's notice of dismissal was a "judicial usurpation of power, or a clear abuse of discretion...leading to a patently erroneous result...," mandamus is appropriate. *In re Rutledge*, 956 F.3d 1018, 1025 (8th Cir. 2020).

The district court took the extraordinary step of wrongly striking Plaintiffs' voluntary dismissal *before Defendants had answered the complaint*, on the mistaken theory that the filing of a petition for interlocutory appeal divested the trial court of jurisdiction over the case. That was clear legal error. And, as a result, it traps the plaintiffs in a hostile forum from which they have repeatedly sought to extricate themselves. Without this court's intervention, the President will be forced to litigate against his wishes in federal court and thus suffer irreparable harm. A writ of mandamus should issue.

## B. Because an Appeal Was Never Docketed in This Court, Rule 42 Did Not Apply to Dismissal of the Petition for Permission to Appeal.

Fed. R. App. P. 42 never applied to the petition for permission to appeal. The defendants argued that "[t]his matter was docketed on June 2, 2025, as confirmed by the Clerk of this Court." R. Doc. 72 at ¶2. Yet the Clerk of Court's letter says otherwise. The clerk's letter of June 2, 2025, to counsel for petitioner states that "[a] petition for permission to appeal has been *filed* under the caption and miscellaneous case number shown above." (emphasis added). But when the Clerk of Court writes to counsel who have filed a notice of appeal, the corresponding letter reads "[t]he district court clerk has transmitted a notice of appeal and docket entries in this matter, and we have *docketed* them under the caption and case number shown above." *See, e.g.,* Letter of Clerk of Court dated July 25, 2023, in *Hotchkiss v. Cedar Rapids Com. Sch. Dist., et al.*, No. 23-2708 (emphasis added).

This difference in the clerk's communications is no coincidence. The clerk understands that the word "docket" (in both its noun and verb forms) has a specific meaning under the Federal Rules of Appellate Procedure. Consider first the situation where a party has taken an appeal "as of right from a district court to a court of appeals…" Fed. R. App. P. 3(d). When the circuit clerk receives "the copy of the notice of appeal and the docket entries from the district clerk under Rule 3(d), *the*

*circuit clerk must docket the appeal* under the title of the district-court action..." Fed. R. App. P. 12(a) (emphasis added).

But when a party seeks permission to appeal, the procedure is governed by Fed. R. App. P. 5. The party requesting the appeal "must file a petition with the circuit clerk and serve it on all other parties to the district-court action." Fed. R. App. P. 5(a)(1). If such permission is granted, at that point, "the appellant must pay the district clerk all required fees...The district clerk must notify the circuit clerk once the petitioner has paid the fees. Upon receiving this notice, the *circuit clerk must enter the appeal on the docket*." Fed. R. App. P. 5(d). (emphasis added).

Fed. R. App. P. 42(b) applies only to docketed appeals. Because this Court had not yet granted the petition (nor had required filing fees been paid to the district clerk) when it was dismissed on June 30, 2025, there is no basis under the rules to require either a stipulation or motion to withdraw a docketed appeal. Because this Court denied the petition, the appeal was never docketed. The district court's determination that Rule 42 applied to the petition was incorrect. R. Doc. 78 at 2. The district court also erred about the effect of filing a petition for permission to appeal. When a permission to appeal is filed, only if it is granted, is the appeal actually "docketed."

### C. The District Court Incorrectly Held That Jurisdiction Was in This Court Merely From the Filing of a Petition for Permission to Appeal.

In its order finding that jurisdiction was in this Court when the petition for permission to appeal was filed, the district court cited as an analogous case *Griggs* v. *Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) for the proposition that "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." R. Doc. 78 at 2. But of course, no notice of appeal has been filed in the district court. *Griggs* is not an analogous case.

Better authority is *City of Los Angeles, Harbor Div.* v. *Santa Monica Baykeeper*, 254 F.3d 882 (9th Cir. 2001). There, the district court had originally certified its order denying a motion to dismiss certain claims under the Clean Water Act and Clean Air Act as suitable for an interlocutory appeal. *Id.* at 884. While that petition was before the Ninth Circuit, the district court reconsidered its order certifying the appeal and vacated the previous certification. *Id.* Two months later, the Ninth Circuit granted the petition for permission to appeal. *Id.*

This created a question about the court's appellate jurisdiction. If the district court could reconsider its certification order while the petition for permission to appeal was pending before the Ninth Circuit, the appellate court would lack

jurisdiction over the appeal. *Id.* at 885. The Ninth Circuit concluded the district court retained that power. "The general rule regarding the power of a district court to rescind an interlocutory order is...[a]s long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, *rescind*, or modify an interlocutory order for cause seen by it to be sufficient." *Id.* (emphasis original).

The Ninth Circuit then applied this rule to the scenario where a party has filed a petition for permission to appeal. "The Supreme Court has concluded that jurisdiction is transferred from a district court to a court of appeals upon the filing of a notice of appeal." *Id.* (citing *Griggs*, 459 U.S. at 58). To apply this rule in the context of an interlocutory appeal, "[w]e must next ascertain when a notice of appeal with respect to an interlocutory order is deemed to have been 'filed' with a court of appeals." *Id.* at 886. Citing Fed. R. App. P. 5(d)(2), the Ninth Circuit held that "a notice of appeal for an interlocutory order is deemed to be filed upon the issuance of an order by a court of appeals permitting an appellant to bring an interlocutory appeal." *Id.* "A district court therefore retains jurisdiction over an interlocutory order—and thus may reconsider, rescind, or modify such an order—until a court of appeals grants a party permission to appeal." *Id.*

This logic fully applies here. The district court could have reconsidered its order denying remand and striking the additional plaintiffs at any time. Fed. R. Civ. P. 54(b); *K.C.1986 Ltd. Partnership* v. *Reade Mfg.*, 473 F.3d 1009, 1017 (8th Cir. 2007) ("[t]he district court has the inherent power to reconsider and modify an interlocutory order any time prior to the entry of judgment."). As such, jurisdiction was not in this Court, and would not have been unless the petition had been granted, which did not happen, the petition was denied, and the required fees paid to the district court clerk. Because those events did not occur, the district court retained jurisdiction throughout.

As a result, President Trump had an absolute right to dismiss because no answer or motion for summary judgment had been filed at the time of the notice. R. Doc. 71. *See* Fed. R. Civ. P. 41(a)(1)(A)(i); *Foss* v. *Federal Intermediate Credit Bank of St. Paul*, 808 F.2d 657, 669 (8th Cir. 1986) (rule "must not be stretched beyond its literal terms if it is to serve its intended purpose."). "Rule 41 provides that the plaintiff loses the right [to dismiss] when an answer or a motion for summary judgment is filed. These two instances have been construed strictly and exclusively." *Safeguard Bus. Sys., Inc.* v. *Hoeffel*, 907 F.2d 861, 863 (8th Cir. 1990). "Thus, we consider only whether an answer or a motion for summary judgment was filed before the notice of voluntary dismissal." *Id.*

"Rule 41(a)(1) is the shortest and surest route to abort a complaint when it is applicable. So long as plaintiff has not been served with his adversary's answer or motion for summary judgment he need do no more than file a notice of dismissal with the Clerk. That document itself closes the file." *Am. Cyanamid Co. v. McGhee*, 317 F.2d 295, 297 (5th Cir. 1963). This disposition is final. "There is nothing the defendant can do to fan the ashes of that action into life and the court has no role to play." *Id.* "This is a matter of right running to the plaintiff and may not be extinguished or circumscribed by adversary or court." *Id.* The rule is "clear and unambiguous on its face and admits of no exceptions that call for the exercise of judicial discretion by any court." *D.C. Electronics, Inc. v. Nartron Corp.*, 511 F.2d 294, 298 (6th Cir. 1975). President Trump completely retained the right to dismiss the action in district court, a right he properly exercised.

### D. The Court Should Grant a Writ of Mandamus to Correct the District Court's Usurpation of Its Authority.

All three grounds for issuance of a writ of mandamus are present here. The normal appellate process would not adequately remedy forcing President Trump to continue litigating this case in federal court. The district court's error in striking the notice of dismissal was clear and indisputable as it misconstrued when jurisdiction is conferred on this Court in a situation where permission for an interlocutory appeal is sought but not yet granted. Because this Court had not granted the petition for

permission to file an appeal, jurisdiction was still with the district court when the notice of dismissal was filed on June 30, 2025. Finally, the grant of the writ is appropriate under the circumstances. The Court's precedents of *In re Apple* and *In re Brazile* involved lesser errors by district courts that this Court used its discretion to correct.

## V. CONCLUSION

For the foregoing reasons, this Court should issue the writ of mandamus, correct the district court's clear error, and direct the district court to treat the case as dismissed.

Dated: August 13, 2025         Respectfully submitted,

/s/ Alan R. Ostergren
**Alan R. Ostergren**
ALAN R. OSTERGREN PC
500 East Court
Avenue Suite 420
Des Moines, Iowa 50309
(515) 207-0134
alan.ostergren@ostergrenlaw.com

/s/ Edward Andrew Paltzik
**Edward Andrew Paltzik**
TAYLOR DYKEMA PLLC
925 E. 25th Street
Houston, Texas 77009
(516) 526-0341
edward@taylordykema.com